Next case on the calendar is Rios v. City of New York. Good morning, Stephen Bergstein for the Plaintiff Appellant. The plaintiff is on a prosecution claim because only a couple of days after the grand jury indicted the plaintiff, the detective who supervised the investigation filled out an arrest report that noted that Rios' tattoos, the plaintiff's tattoos, were materially different from the tattoos worn by the woman who was involved in the gun sale. So, this is a case of, you know, they got the wrong person with respect to the false arrest, yet when they knew that Rios had tattoos that were materially different from J.D. Paz, who was present at the gun sale, they proceeded with the arrest anyway and the plaintiff spent four months in confinement. And then even after she was released from confinement, she was still under indictment for another eight or nine months until the charges were finally dismissed outright for lack of probable cause. So, that's the case in a nutshell. I recognize that a grand jury indictment creates a presumption of probable cause, but that is not a bright line rule. There are ways around it. If something happens along the way that foreseeably results in an unlawful or an unjust confinement, and this court held that in Cameron v. City of New York, where it's the initial wrongdoer, that's Zapata, can reasonably foresee that his misconduct will result in a quote-unquote independent decision by the prosecutor that results in a deprivation of liberty. And that's what happens here. Let me ask. Your argument seems to hinge a lot on this discrepancy in the tattoos, and I just want to make sure I'm understanding the record correctly. So, the film of J.D. Paz, the person who was present at the crime, showed she had tattoos on her shoulder and a chest and that she didn't have a tattoo on her arm. And your argument is, at the time an indictment takes place, your client is arrested, and the arrest report indicates that your client has tattoos on her shoulder and on her arm, and that's all it indicates. Correct. Now, it doesn't indicate, you began the argument by saying that the officer, when he filled out the arrest report, noted the discrepancy between these two documents. The arrest report doesn't actually do that. It just notes what tattoos your client had on the day of her arrest. Correct. So, why does this defeat the probable cause, or why is this at that moment, because I think that your argument boils down to at that moment the officer should have realized we have the wrong person and acted to make sure she did not spend four months in jail. That's the argument. What does an officer do when he fills out the report and he sees a discrepancy like this? You can either be silent and allow the person's prosecution to continue, which is wrong, or you do something, you intervene. You know, you get on the phone, you talk to the prosecutor, we have a problem. So far as I can tell from the record, that didn't happen. And that's the malicious prosecution. So are you saying that there was any fraud or bad faith, or what is your... Well, not fraud. I think the bad faith is the failure to affirmatively act upon information that makes it clear they have the wrong person. And the failure to do so foreseeably results in her continued confinement. And so the argument that the prosecutor is an independent actor and that it's not Zapata's fault is not entirely accurate when Zapata, his inaction foreseeably results in the plaintiff's continued detention. What about the qualified immunity point? I mean, this is a case where there are similarities. I understand the differences in appearances, and you make those well. But there are similarities between the appearances of Rios and J.D. Poirot. There is Rios's prior connection to Sentel Smith. Why would it have been unreasonable for an officer to form a belief that there was some probable cause here? It might have been mistaken. Well, because the discrepancy in the tattoos greatly outweighs the fact that your Honor just laid out. I mean, they didn't look exactly alike. The photographs are on the record. But whatever similarities may have existed, that both women knew the ringleader of the gun sale, whatever similarities may have existed between the two women, the tattoos are huge. If you can have a balancing, the tattoos greatly outweigh whatever similarities exist between the women. The tattoo on your client's arm could have been acquired after the date of the gun sale, right? So it really boils down to the tattoo on the chest of the person in the video. And that could have been—I'm not saying it was. Your client was—the prosecution was discontinued. But in this case, as they got more evidence, it seemed like the prosecutor did what you would want a prosecutor to do. You get notice of an alibi witness. They investigate the alibi witness. They get the cell phone records. And your client ultimately—the prosecution against her is discontinued. But at the moment of the arrest report, I'm not sure that the existence of those tattoos alone defeated the probable cause. So help me understand what I'm missing. Well, they didn't do anything when they saw that there was this—I guess theoretically she could have gotten a tattoo in the interim. But they didn't do anything about it. And, you know, again, ultimately she was released, but that was almost a year later. Thank you. Can I ask you just to be clear as to what it is that you are appealing? I just want to be clear about that. Are you appealing anything other than the grant of summary judgment for the Detective Zapata and Undercover Officer 177 on the Section 1983 malicious prosecution and abusive process claims? That's the appeal. 177 and Zapata. Okay. I just wanted to be clear about that. Thank you. Thank you. May it please the Court. Antonella Carlin for the defendants. The district court here correctly granted summary judgment on Rios' malicious prosecution claims for several reasons. First, the grand jury indictment created a presumption probable cause, which Rios has utterly failed to rebut. There's no evidence of any bad faith in the procurement of the indictment. Second, after the indictment, the ADA took complete control over the continued prosecution of Rios, thereby severing any causal link between the defendant's conduct and Rios' prosecution. Is it your view that the presumption of probable cause, which the indictment creates, cannot be overcome by the discovery of new evidence? No. So the grand jury indictment creates presumption of probable cause for the initiation of the prosecution. And the only way that can be rebutted is with evidence that the grand jury indictment was procured through fraud or some kind of bad faith. And then there's the second aspect, which is the continued prosecution. And at that point, the ADA had completely taken over, and everything, all the information was going through the prosecutor. And the defendants, to the extent that they were involved, was because the prosecutor was asking them to interview witnesses or, you know, their involvement was completely through the prosecutor. How do you respond to the argument that, you know, that after Rios was arrested, it was plain from the arrest report, which indicates that the arresting officer was Zapata, that Rios had different tattoos from the paw-shaped ones that led the suspect in the investigation to be called J.D. Paws, and that the discovery of Rios' tattoos constitutes new evidence that leads probable cause to dissipate? How do you respond? Well, first, I'm not sure that Zapata was actually there at the time of the arrest. I do think he filled out the arrest report based on the information provided by the officers. Is that going to list him as the arresting officer? It might, but I think the other stuff in the record indicates that he actually wasn't there. He just filled out, as the supervisor, he filled out the report. So the actual report might indicate that he was the arresting officer, but he wasn't actually there. And so based on the information that was provided by the officers, he filled out the arrest report, which noted that she had a tattoo on her back and one on her forearm. And you have to remember, at the time the control-by took place, it was a year before, so I don't think he realized that there was any discrepancy at that point. It wasn't something that was glaring or obvious. And then you also, so when they did realize that the- It's a lot different, I mean, in terms of color, you know, color tone. Actually, I don't think that they do. There's some lighting issues with the different photos. But after the arrest, she was put in a lineup, and the undercover officer, again, identified her as the woman who sold him the drugs. So that was after the arrest took place. And to the extent that the tattoos, when the ADA realized that there was an issue with the tattoos, she took photographs of the tattoos, and she confirmed that, as of the time of the photographs, the tattoos were different. But at that point still, it was unclear as to whether or not Rios had the tattoo on her forearm at the time of the actual controlled buy. It wasn't until they got photos from her cell phone that were date stamped that they could definitively say that at the time of the controlled buy, she didn't have the tattoo on her forearm. And so based on that, as well as some other evidence, including the alibi, the ADA ultimately made the decision that they couldn't prove beyond a reasonable doubt that- Was it a proper police procedure, help me understand, for Rios and the undercover agent 177 not to verify either before or after Rios' arrest that Rios indeed fit the description of J.D. Paws, including the paw-shaped tattoos? Well, I think they did verify, because after her arrest, they did a line-up that same day, and the undercover picked her out of the line-up. And I don't think, you know, Rios claims that it was Vasquez who was at the controlled buy, and, in fact, Vasquez's tattoo on her back shoulder is also not paw prints. I just think, you know, these things happen very quickly, and afterwards, it's a pretty tense situation. The undercover described it as something that maybe looked like paw prints but could easily be butterflies or small flowers. You know, so they're similar. They have similar build. It's not unreasonable. He twice picked her out of photo line-up, then actually picked her out of a line-up. And at all times throughout the prosecution, the ADA was actively investigating Rios' claims, and when she gave the alibi witness, they interviewed the alibi witness, and ultimately the ADA's continued investigation is what led to the dismissal of the charges. If there are no further questions, we'll rest on our breath. Thank you. A couple of quick points. I think the record shows Zapata was present at the time of the gun sale. That's page 94 of the appendix where he talks about he was able to video J.D. Paul and the male gun seller. In response to Your Honor's question about the tattoos, could she have added a tattoo to the arm, the other discrepancy was that J.D. Paul had a tattoo on her chest. Rios didn't have a tattoo on her chest. I think it's a lot easier to get a tattoo than to remove a tattoo. Thank you. Thank you both for your arguments. The Court will reserve decision.